**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————————

No. 13-3235

———————————

ANDREW DWYER; THE DWYER LAW FIRM, LLC,
Appellants

v.

CYNTHIA A. CAPPELL, in her official compacity as the
Chair of the Supreme Court of New Jersey Committee on
Attorney Advertising; JONATHAN M. KORN, in his official
capacity as the Vice Chair of the Supreme Court of New
Jersey Committee on Attorney Advertising; FRANK L.
CORRADO, in his official capacity as a member of the
Supreme Court of New Jersey Committee on Attorney
Advertising; ELIZABETH Y. FUERST, in her official
capacity as a member of the Supreme Court of New Jersey
Committee on Attorney Advertising; SHERYL MINTZ
GOSKI, in her official capacity as a member of the Supreme
Court of New Jersey Committee on Attorney Advertising;
AMIRALI Y. HAIDRI, in his official capacity as a member
of the Supreme Court of New Jersey Committee on Attorney
Advertising; NORA POLIAKOFF, in her official capacity as
a member of the Supreme Court of New Jersey Committee on
Attorney Advertising; CAROL JOHNSTON, in her official
capacity as a member of the Supreme Court of New Jersey
Committee on Attorney Advertising

_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil Action No. 2-12-cv-03146)
District Judge: Honorable Faith S. Hochberg

_____

Argued February 18, 2014

Before:  AMBRO, HARDIMAN,
and GREENAWAY, JR., Circuit Judges

(Opinion filed:  August 11, 2014)

Andrew W. Dwyer, Esquire          (Argued)
The Dwyer Law Firm
17 Academy Street, Suite 1201
Newark, NJ   07102

        Counsel for Appellants

John J. Hoffman
    Acting Attorney General of New Jersey
Lisa A. Puglisi
    Assistant Attorney General
Susan M. Scott                    (Argued)
    Deputy Attorney General
Office of Attorney General of New Jersey
Department of Law and Public Safety
P.O. Box 112
25 Market Street
Richard J. Hughes Complex
Trenton, NJ   08625

Counsel for Appellees

_____

OPINION OF THE COURT

_____

AMBRO, <u>Circuit Judge</u>

Attorney Andrew Dwyer, lauded by New Jersey judges in separate judicial opinions, published on his law firm's website those complimentary remarks. One of the judges objected to this, and ultimately the New Jersey Supreme Court adopted an attorney-conduct guideline that bans advertising with quotations from judicial opinions unless the opinions appear in full. Is the guideline an unconstitutional infringement on speech as applied to the advertisements of Mr. Dwyer and his firm? We believe it is and thus reverse the contrary decision of the District Court.

## I. FACTS AND PROCEDURAL HISTORY

In 2007, Dwyer[1] launched a website, www.thedwyerlawfirm.com. Its home page greeted potential clients with the following prominently displayed advertisement:

**"<u>Are You Thinking Of Suing Your Employer?</u>"**

"Mr. Dwyer is, I think, an exceptional lawyer, one of the most exceptional lawyers I've had the pleasure of appearing before me. He is

_____

[1] The plaintiffs-appellants in this case—Andrew Dwyer and his law firm, The Dwyer Law Firm, L.L.C.—are referred to collectively and individually as "Dwyer."

tenacious, professional in his presentation to the Court, a bit too exuberant at times, certainly passionate about his position, but no one can fault his zeal and his loyalty to his client, and no one can question his intellect . . . ."
**---Hon. Jose L. Fuentes, J.S.C.**

"The inescapable conclusion is . . . that plaintiffs achieved a spectacular result when the file was in the hands of Mr. Dwyer. . . . Mr. Dwyer was a fierce, if sometimes not disinterested advocate for his clients, and through an offensive and defensive motion practice and through other discovery methods molded the case to the point where it could be successfully resolved."
**---Hon. William L. Wertheimer, J.S.C.**

The excerpts are from unpublished (though presumably public) judicial opinions concerning fee applications in employment discrimination cases brought under the New Jersey Law Against Discrimination. They were made in the context of the statute's fee-shifting provisions, which require judges to assess the abilities and legal services of plaintiffs' attorneys.

By letter to Dwyer in April 2008, Judge Wertheimer requested that his quoted comments be removed from the website. The Judge explained that, although he did "not have reason to doubt the accuracy of the verbiage," he "would not care for potential clients [of Dwyer] to believe that it is a blanket endorsement" of him. Dwyer refused to take the excerpt down because he did not believe the language was false or misleading. Subsequently, Judge Wertheimer's letter and Dwyer's response were forwarded to the New Jersey

4

Bar's Committee on Attorney Advertising (the "Committee"), whose members are the defendants-appellees before us.

In February 2009, after several meetings and after receiving submissions from Dwyer, the Committee published a Notice to the Bar soliciting comments on a proposed attorney advertising guideline (the "Proposed Guideline"). It provided that "[a]n attorney or law firm may not include, on a website or other advertisement, a quotation from a judge or court opinion (oral or written) regarding the attorney's abilities or legal services." Dwyer submitted a comment in which he argued that the Proposed Guideline was an unconstitutional ban on speech. In addition, while the Proposed Guideline was pending, Dwyer added to the website a third excerpt from an unpublished opinion concerning a fee application in a suit under the New Jersey Conscientious Employee Protection Act:

> "Based upon my observations of [Dwyer] in court there's no question in my mind that he is in the upper echelon of employment lawyers in this state. . . ."
> **---Hon. Douglas H. Hurd, J.S.C.**

Three years later, in May 2012, the New Jersey Supreme Court approved an amended version of the Proposed Guideline, now called Guideline 3. It differs from the Proposed Guideline in one respect: whereas the Proposed Guideline simply banned advertising with quotes from judges or judicial opinions, Guideline 3 bans those ads but allows attorneys to advertise with the full text of judicial opinions. In its final form, Guideline 3 provides:

> Attorney Advertisements: Use of Quotations or Excerpts From Judicial Opinions About the Legal Abilities of an Attorney

An attorney or law firm may not include, on a website or other advertisement, a quotation or excerpt from a court opinion (oral or written) about the attorney's abilities or legal services. An attorney may, however, present the full text of opinions, including those that discuss the attorney's legal abilities, on a website or other advertisement.

The official comment to Guideline 3 demonstrates that it was promulgated to target Dwyer's website specifically:

This Guideline arises from the review by the Committee on Attorney Advertising of an attorney's website that included two quotations from judges about the attorney's legal abilities. The quotations were from unpublished opinions of the judges on fee applications and the judges' names and titles were included in the advertisement.

[Rule of Professional Conduct] 7.1(a) prohibits misleading statements. When a judge discusses an attorney's legal abilities in an opinion, such as in a fee-shifting or division-of-fee case, the judge is setting forth findings of fact and conclusions of law pertinent to the decision in the matter. The judge is not personally endorsing the attorney or making a public statement about the attorney for advertising purposes. In fact, judges are expressly prohibited from endorsing attorneys or providing testimonials regarding attorneys. The Committee finds that such quotations or excerpts, when taken out of the context of the

6

judicial opinion and used by an attorney for the purpose of soliciting clients, are prohibited judicial endorsements or testimonials. As such, these quotations or excerpts from a judicial opinion in attorney advertising are inherently misleading in violation of [Rule of Professional Conduct] 7.1(a).

The day before Guideline 3 went into effect Dwyer filed this action in the District of New Jersey seeking injunctive and declaratory relief under 42 U.S.C. § 1983. He simultaneously moved for a temporary restraining order and preliminary injunction to enjoin enforcement of the Guideline. *See Dwyer v. Cappell*, 951 F. Supp. 2d 670, 671 n.1 (D.N.J. 2013). The District Court denied the request for a temporary restraining order and set a full briefing schedule for the preliminary injunction motion. *See id.* The parties then filed cross-motions for summary judgment, which the District Court considered concurrently with the motion for a preliminary injunction. *Id.*

During discovery, Dwyer deposed Carol Johnston, the designated agent for the Committee. Ms. Johnston testified that the excerpts on Dwyer's website violated Guideline 3. She claimed that, even if the quotations include hyperlinks to the full text of the judicial opinions, they would still violate the Guideline. She also testified that, although the Committee had no evidence demonstrating that the excerpts misled potential clients, based on "common sense" it had concluded that excerpts from judicial opinions regarding attorneys' abilities are inherently misleading. Aside from Judge Wertheimer, there have been no complaints about Mr. Dwyer's website, and no one has claimed being misled by the judicial excerpts.

The District Court granted the Committee's summary judgment motion, denied Dwyer's motion for summary judgment, and denied as moot his motion for a preliminary injunction.  *See id.* at 675-76.  It explained that "[t]he core of the parties' dispute is the legal issue of whether Guideline 3 is most appropriately characterized as a 'restriction' on speech, or whether it instead is a regulatory requirement of 'additional disclosure.'"  *Id.* at 673.  The Court concluded that "because [Guideline 3] requires full disclosure of a judicial opinion," it is "not a ban on speech but is instead a disclosure requirement."  *Id.* at 674.  Moreover, it held that a judicial quotation's potential to mislead is "self-evident" because, "[w]ithout the surrounding context of a full opinion, judicial quotations relating to an attorney's abilities could easily be misconstrued as improper judicial endorsement of an attorney, thereby threatening the integrity of the judicial system."  *Id.* at 674-75.

The District Court applied the test for disclosure requirements set in *Zauderer v. Office of Disciplinary Counsel of Supreme Court of Ohio*, 471 U.S. 626, 651 (1985).  Under that standard, it determined that the Guideline was "reasonably related to the [S]tate's interest in preventing the deception of consumers" and was not "unduly burdensome."  *Dwyer*, 951 F. Supp. 2d at 675.  Thus it upheld the Guideline as constitutional.  *Id.*  In a footnote, the Court noted that, even if Guideline 3 were a restriction on speech subject to the more rigorous intermediate scrutiny under *Central Hudson Gas & Electric Corp. v. Public Service Commission*, 447 U.S. 557, 563-64 (1980)—under which the regulation must "'directly advanc[e]' a substantial governmental interest and be 'n[o] more extensive than is necessary to serve that interest,'" *Milavetz, Gallop & Milavetz, P.A. v. United States*, 559 U.S. 229, 249 (2010) (alterations in *Milavetz*) (quoting *Central Hudson*, 447 U.S. at 566)—it would still be constitutional, *see*

8

*Dwyer*, 951 F. Supp. 2d at 675 n.6. Dwyer appeals these decisions as applied to him and his firm.[2]

## II. JURISDICTION AND STANDARD OF REVIEW

The District Court had jurisdiction under 28 U.S.C. § 1331. We have jurisdiction pursuant to 28 U.S.C. § 1291.

"This court reviews [a] [d]istrict [c]ourt's decision resolving cross-motions for summary judgment *de novo*." *Startzell v. City of Phila.*, 533 F.3d 183, 192 (3d Cir. 2008) (italics added). "To that end, we are required to apply the same test the [D]istrict [C]ourt should have utilized initially." *Chambers ex rel. Chambers v. Sch. Dist. of Phila. Bd. of Educ.*, 587 F.3d 176, 181 (3d Cir. 2009) (citation and internal quotation marks omitted). This test requires a court to "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). We thus review *de novo* the District Court's holding that Guideline 3 does not violate Dwyer's speech rights under the First Amendment of our Constitution.

## III. DISCUSSION

**A. Restrictions on Speech and Disclosure Requirements.** The First Amendment states that "Congress shall make no law . . . abridging the freedom of speech," U.S. Const. amend I, and applies to the States through the Due Process Clause of the Fourteenth Amendment, *see Gitlow v.*

---

[2] Though Dwyer's complaint and his opening brief on appeal mention a facial challenge to Guideline 3 (something the District Court did not deal with), Dwyer clarified at oral argument before us that he relies on the as-applied challenge exclusively.

9

*New York*, 268 U.S. 652, 666 (1925). The parties agree that our case involves only commercial speech. It is by now well settled that "commercial speech is entitled to the protection of the First Amendment, albeit to protection somewhat less extensive than that afforded noncommercial speech." *Zauderer*, 471 U.S. at 637 (internal quotation marks omitted); *see also Sorrell v. IMS Health Inc.*, 131 S. Ct. 2653, 2672 (2011). Similarly, though there was once a time when attorney advertising could be proscribed without justification, it is now settled that such advertising is "a form of commercial speech, protected by the First Amendment, and . . . 'may not be subjected to blanket suppression.'" *In re R.M.J.*, 455 U.S. 191, 199 (1982) (quoting *Bates v. Arizona*, 433 U.S. 350, 383 (1977)). "'[T]he party seeking to uphold a restriction on commercial speech carries the burden of justifying it.'" *Edenfield v. Fane*, 507 U.S. 761, 770 (1993) (quoting *Bolger v. Youngs Drug Prods. Corp.*, 463 U.S. 60, 71, n.20 (1983)).

As the District Court noted, this case concerns two possible tracks of analysis, only one of which can apply: restrictions on speech and disclosure requirements. *See Dwyer*, 951 F. Supp. 2d at 674. The Committee maintains that Guideline 3 is a disclosure requirement targeting misleading advertising and hence subject only to *Zauderer* scrutiny. Dwyer contends that Guideline 3 is a restriction on non-misleading speech that should instead be reviewed under *Central Hudson* intermediate scrutiny.

There are material differences between "outright prohibitions[3]" on speech, where the State attempts to "prevent attorneys from conveying information to the public,"

---

[3] While "restrictions" on speech are typically perceived as a subset of speech "prohibitions," we (as do other courts) use the terms interchangeably.

and "disclosure requirements," which seek only to require them to "provide somewhat more information than they might otherwise be inclined to present." *Zauderer*, 471 U.S. at 650. Recognizing these differences, the Supreme Court has created different frameworks once it is determined whether a regulation is a restriction or a disclosure requirement.

For restrictions, there are three general categories of commercial speech: non-misleading, potentially misleading, and misleading. The more misleading the advertisement, the more constitutional leeway is granted the States in restricting it. In this context, "[c]ommercial speech that is not false, deceptive, or misleading" may only be restricted if the regulation withstands intermediate scrutiny under *Central Hudson. Ibanez v. Fla. Dep't of Bus. & Prof. Reg., Bd. of Accountancy*, 512 U.S. 136, 142 (1994). States may prohibit potentially misleading ads, but only if the information cannot be presented in a way that is not deceptive (such as through adding a disclosure requirement). *R.M.J.*, 455 U.S. at 203. Advertising that is inherently misleading or has proven to be misleading in practice "may be prohibited entirely." *Id.*; *see also Ibanez*, 512 U.S. at 142 ("[F]alse, deceptive, or misleading commercial speech may be banned."). To repeat in another way, restrictions on speech get protection under the Constitution inversely proportional to the deceptiveness of the target advertisement.

As noted, disclosure requirements receive less rigorous scrutiny than restrictions on speech. *See Zauderer*, 471 U.S. at 651; *see also R.J. Reynolds Tobacco Co. v. FDA*, 696 F.3d 1205, 1212 (D.C. Cir. 2012) (characterizing *Zauderer* scrutiny of disclosure requirements as "akin to rational-basis review"). In the attorney advertising context, the Supreme Court has consistently preferred disclosure over prohibition. It recognized in *Bates* that, "because the public lacks sophistication concerning legal services," advertising by

11

attorneys poses special risks of deception. 433 U.S. at 383. Because of this risk, "some limited supplementation, by way of warning or disclaimer[4] or the like, might be required," even where an advertisement contains only truthful information about the availability and terms of legal services, "so as to assure that the consumer is not misled." *Id.* at 384; *see also id.* at 375 ("[T]he preferred remedy is more disclosure, rather than less."). Subsequently, in *R.M.J.* the Court noted that where an attorney advertisement is potentially misleading, "the remedy in the first instance is not necessarily a prohibition but preferably a requirement of disclaimers or explanation." 455 U.S. at 203 (citing *Bates*, 433 U.S. at 375). *Bates* and *R.M.J.* demonstrate that, when it comes to attorney advertising, the State may compel supplemental disclosures to clarify truthful but potentially misleading advertisements. However, in neither case did the Court set a standard for evaluating these disclosures.

That void was filled by *Zauderer*. There an attorney advertised to putative clients that "cases are handled on a contingent fee basis of the amount recovered. If there is no recovery, no legal fees are owed by our clients." 471 U.S. at 631. The advertisement failed to comply with a state disclosure requirement mandating that any advertisement for contingent fee representation warn that, while potential contingent-fee clients would not be responsible for legal fees,

---

[4] Though we typically think of a disclaimer as a "statement that one is not responsible for or involved with something," Black's Law Dictionary 562 (10th ed. 2014), and a disclosure as "a revelation of facts," *id.*, they may meld. For example, to require that lawyers' advertisements state that what a judge wrote "is not an endorsement" is both a disclaimer of an endorsement and a disclosure of supplemental information. Thus courts sometimes use the terms interchangeably.

12

they may still be responsible for court costs. *Id.* at 633. Zauderer was subsequently brought up on disciplinary charges for, among other things, failing to include the disclosure.

The Supreme Court rejected Zauderer's argument that the state disclosure requirement violated his free speech rights. *Id.* at 650-53. It explained that where the State requires an advertiser to "include in his advertising purely factual and uncontroversial information about the terms under which his services will be available," the "constitutionally protected interest in *not* providing any particular factual information in [the advertisement] is minimal." *Id.* at 651 (emphasis in original). The Court was quick to note, however, that this did not mean "that disclosure requirements do not implicate the advertiser's First Amendment rights at all." *Id.* at 651. It therefore set out the now-prevailing standard for assessing their constitutional validity: disclosure requirements are permissible so long as they are "reasonably related to the State's interest in preventing deception of consumers," *id.*, with the understanding that "unjustified or unduly burdensome disclosure requirements might offend the First Amendment by chilling protected commercial speech." *Id.*

Applying this new standard to Zauderer's case, the Court held that the State's requirement "easily pass[ed] muster . . . ." *Id.* at 652. Absent the disclosure, it was "hardly a speculative" assumption that a substantial number of laypersons not aware of the distinction between "fees" and "costs" would be left with the impression that a loss in court would be entirely free of charge. *Id.* Although the State produced no evidence that consumers were deceived, the Court explained that "[w]hen the possibility of deception is as self-evident as it is in this case, we need not require the State to conduct a survey of the . . . public before it [may]

13

determine that the [advertisement] had a tendency to mislead." *Id.* at 652-53 (citation and internal quotation marks omitted) (second and third alterations in original). In this rule-of-reason context, the disclosure requirement did not abridge Zauderer's freedom of speech.

The Supreme Court reaffirmed the *Zauderer* framework for analyzing disclosure requirements in *Milavetz*, 559 U.S. at 249-50. There attorneys brought a First Amendment challenge to a requirement that professionals assisting consumers with bankruptcy must state in their ads that "[w]e are a debt relief agency. We help people file for bankruptcy relief under the Bankruptcy Code." *Id.* at 233 (quoting 11 U.S.C. § 528(a)(4)). The attorneys contended that *Central Hudson* intermediate scrutiny should apply. *Id.* at 249. The Court rejected this argument and instead upheld the requirement under *Zauderer*. *Id.* at 249-50. It explained that *Zauderer* applied because the provision in question was "directed at misleading commercial speech" and "impose[d] a disclosure requirement rather than an affirmative limitation on speech." *Id.* at 249 (emphasis omitted). The takeaway: there exist different frameworks for analyzing restrictions on speech and disclosure requirements.

Guideline 3 bears characteristics of both categories. Yet we need not decide whether it is a restriction on speech or a disclosure requirement. This is because the Guideline is not reasonably related to preventing consumer deception and is unduly burdensome. Hence it is unconstitutional under even the less-stringent *Zauderer* standard of scrutiny.

**B. Guideline 3 Cannot Survive *Zauderer* Scrutiny.** The Committee hyperbolizes that the excerpts prohibited by Guideline 3 are inherently misleading because laypersons reading such quotes would understand them to be judicial endorsements. Even were we to assume that excerpts of

14

judicial opinions are potentially misleading to some persons, the Committee fails to explain how Dwyer's providing a complete judicial opinion somehow dispels this assumed threat of deception.[5]

A disclosure requirement is "reasonably related to the State's interest in preventing deception of consumers" where it could plausibly dispel the misleading nature of the advertisement to those who read it. *Zauderer*, 471 U.S. at 651. In *Zauderer* the requirement succinctly highlighted the latent ambiguity in the advertisement by requiring a disclosure that, although consumers would not owe legal fees, they could still potentially owe court costs. *See* 471 U.S. at 652. Similarly, in *Milavetz* the required disclosure clarified to consumers that an advertisement for bankruptcy "relief" was hiding the possibility that this relief could itself be costly.

---

[5] As to whether judicial opinion excerpts on Dwyer's website actually have the potential to mislead, we note that the Committee has produced no evidence this is so, instead relying on "common sense." While it is the law that "[w]hen the possibility of deception is . . . self-evident" a state is not required to produce evidence to justify its imposition of a disclosure requirement, *Milavetz*, 559 U.S. at 251 (quoting *Zauderer*, 471 U.S. at 652), "we cannot allow rote invocation of the words 'potentially misleading' to supplant the . . . burden to demonstrate that the harms it recites are real and that its restriction will in fact alleviate them to a material degree," *Ibanez*, 512 U.S. at 146 (internal quotation marks and citations omitted). Unlike the advertisements targeted by the disclosure requirements in *Zauderer* and *Milavetz*, which had the obvious propensity to deceive laypersons, the deceptiveness of accurately transcribed statements made by judges in judicial opinion excerpts is far from "self-evident."

15

*See* 559 U.S. at 251-52. In each case there was a reasonable argument that the disclosure remedied the potentially misleading advertisement.

In contrast, Guideline 3 does not require disclosing anything that could reasonably remedy conceivable consumer deception stemming from Dwyer's advertisement. Providing a full judicial opinion does not reveal to a potential client that an excerpt of the same opinion is not an endorsement. Indeed, providing the full opinion may add only greater confusion. A reasonable attempt at a disclosure requirement might mandate a statement such as "This is an excerpt of a judicial opinion from a specific legal dispute. It is not an endorsement of my abilities." Such a statement or its analogue would, we believe, likely suffice under *Zauderer*. Guideline 3 does not.

Even more supportive of Dwyer's position is that Guideline 3 is unduly burdensome. The Supreme Court recognized in *Zauderer* that "unduly burdensome disclosure requirements might offend the First Amendment by chilling protected commercial speech." 471 U.S. at 651. While the Court did not explain in what circumstances a disclosure requirement could be "unduly burdensome," it later clarified that this condition exists where the required disclosure is so lengthy that it "effectively rules out" advertising by the desired means. *See Ibanez*, 512 U.S. at 146.

*Ibanez* thus becomes instructive. There a Florida attorney who was also a certified financial planner ("CFP") listed her CFP credential next to her name in advertisements in the yellow pages, on her business card, and on her law office stationery. *Id.* at 138. In a subsequent disciplinary proceeding the State Board of Accountants argued that, if Ibanez wanted to list herself as a CFP, Florida law required

16

that she would have to provide a disclosure. It required, "in the immediate proximity" of the CFP designation, Ibanez to

> [1] state that the recognizing agency [here the Certified Financial Planner Board of Standards] is not affiliated with or sanctioned by the state or federal government . . . [and] [2] set out the recognizing agency's requirements for recognition, including, but not limited to, education, experience, and testing.

*Id.* at 146 (citations, brackets, and internal quotation marks omitted). The Supreme Court rejected the requirement as unduly burdensome because "[t]he detail required . . . effectively rule[d] out notation of the [CFP] designation on a business card or letterhead, or in a yellow pages listing." *Id.* at 146-47.[6]

Post-*Ibanez* the Fifth Circuit Court similarly struck down an attorney disclosure requirement as unduly burdensome. *See Public Citizen Inc. v. La. Att'y Disciplinary Bd.*, 632 F.3d 212, 228-29 (5th Cir. 2011). The case involved a Louisiana requirement that attorneys disclose substantial information in any televised advertisement:

> [A]n attorney [television] advertisement must include, both written in a large font *and* spoken slowly, at least all of the following information: (1) the lawyer's name and office location; (2) a client's responsibility for costs; (3) all jurisdictions in which the lawyer is licensed; (4) the use of simulated scenes or pictures or actors portraying clients; and (5) the use of a

---

[6] The Court also found the requirement unjustified because the alleged harm was "purely hypothetical." *Id.* at 146.

> spokesperson, whether the spokesperson is a lawyer, and whether the spokesperson is paid.

*Id.* at 229 (internal citations omitted and emphasis in original). This requirement, the Court held, "effectively rule[d] out" attorneys' abilities "to employ short advertisements of any kind" and was therefore overly burdensome. *Id.*; *see also Tillman v. Miller*, 133 F.3d 1402, 1403-04 (11th Cir. 1998) (*per curiam*); *cf. Borgner v. Brooks*, 284 F.3d 1204, 1215 (11th Cir. 2002) (upholding one sentence disclosure as not "especially long or burdensome").

Guideline 3 effectively rules out the possibility that Dwyer can advertise with even an accurately quoted excerpt of a judicial statement about his abilities. To comply with Guideline 3, he must advertise with a full-length judicial opinion if he wants to use any portion of that opinion on the website. Even a hyperlink to unquoted portions of the opinion fails the Guideline. This requirement is far more onerous than the disclosures invalidated in *Ibanez* and *Public Citizen* and necessarily prevents any form of advertisement with simply a judicial excerpt. The only realistic medium for quoting a full judicial opinion in an advertisement is, ironically, a website, with its theoretically endless capacity. However, even on Dwyer's own website providing a full-text judicial opinion is so cumbersome that it effectively nullifies the advertisement.[7]

While the intention behind Guideline 3 may be to make it so burdensome to quote judicial opinions that attorneys will cease doing so, that type of restriction—an

---

[7] While we recognize that Dwyer challenges Guideline 3 only as applied to his website, the effect of the Guideline is all the more stark, when applied to attorney advertising in a newspaper or magazine, let alone on the radio or television.

outright ban on advertising with judicial excerpts—would properly be analyzed under the heightened *Central Hudson* standard of scrutiny. Although such a ban would fail as applied to Dwyer given our holding under the less stringent *Zauderer* standard, we need not decide whether such a ban would be valid in other cases. Because Guideline 3 effectively precludes advertising with accurate excerpts from judicial opinions on Dwyer's website, it is unduly burdensome.

\* \* \* \* \*

Guideline 3 as applied to Dwyer's accurate quotes from judicial opinions thus violates his First Amendment right to advertise his commercial services. Requiring Dwyer to reprint in full on his firm's website the opinions noted above is not reasonably related to preventing consumer deception. To the extent the excerpts of these opinions could possibly mislead the public, that potential deception is not clarified by Guideline 3. In any event, what is required by the Guideline overly burdens Dwyer's right to advertise. We thus reverse the order of the District Court and remand the case.